Argued March 9, affirmed April 6, 1915.

# COLUMBIA ENGINEERING WORKS *v.* MALLORY.*

(147 Pac. 542.)

**Trademarks and Trade Names—Unfair Competition—Test—Likelihood of Deception.**

1. The test of unfair competition by a subsequent manufacturer is whether he puts his wares on the market in such form and manner that deception of the ordinary buyer in the ordinary course of business is likely or probable; a showing of specific instances of purchasers being deceived not being necessary, and mere possibility of deception not being enough.

---

*As to unfair competition in sale or manufacture of article, not protected by patent, identical with that originated by competitor, see note in 17 L. R. A. (N. S.) 448. And on the right to protection against use by rival of similar design, shell or pattern not protected by patent, see notes in 19 L. R. A. (N. S.) 269 and 37 L. R. A. (N. S.) 259.

As to the right to protection against use of a particular number by a competitor, see note in 8 L. R. A. (N. S.) 1153.    REPORTER.

**Trademarks and Trade Names—Unfair Competition—Deception—Evidence.**

2. The Mallory pulleys *held* not put on the market in such form or manner that deception of the public into thinking it is buying those of the Columbia Engineering Works, a prior manufacturer, is likely or probable, notwithstanding like coloring or manganese sheaves.

**Trademarks and Trade Names—Unfair Competition—Advertising Repair Parts.**

3. It is not unfair competition with plaintiff, a manufacturer of pulleys, for defendant, a subsequent manufacturer, to advertise "our sheaves and pins fit your old blocks," making and selling repair parts for pulleys other than those manufactured by defendant not being unfair competition, if there is no deception, and the goods are not put out as those of another.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2. Statement by MR. JUSTICE HARRIS.

This is an action by the Columbia Engineering Works, a corporation, against Frederick B. Mallory.

The plaintiff charges that the defendant has been guilty of unfair competition in the manufacture and sale of certain pulleys which in the parlance of the trade are called blocks. It appears from the record that the plaintiff, since about 1903, has made a specialty of · manufacturing and selling a line of pulleys which have been advertised to the public under the name of Skookum blocks. The plaintiff commenced by making the sheaves of cast iron, while the shell of the block was made of wrought steel. Later on some steel was put into the sheave, and afterward, about 1907 or 1908, the plaintiff commenced to manufacture the sheave of manganese steel, being the first manufacturer of pulleys with manganese steel sheaves. Iron, steel and manganese sheaves were manufactured by the plaintiff, and, for the purpose of preventing one from being mistaken for the other, distinctive colors were used in painting the different sheaves. All parts of the pulley were painted black, except the sheave, which was painted red if made of manganese.

By means of persistent advertising, a large business was developed, particularly in Oregon, Washington and California. Catalogues and leaflets were issued containing cuts of pulleys and showing the sheaves in red, with the printed information "manganese sheaves are colored red." The different sizes of pulleys were accorded different numbers. The pulley made by plaintiff is known to the trade as Columbia or Skookum; the latter being the trademark.

The defendant, Frederick B. Mallory, has been engaged in selling logging tools and equipment for about ten years. He had built up a considerable pulley business in 1907, when he commenced selling plaintiff's pulleys on a consignment basis, which method was followed until the spring of 1911. The defendant began to manufacture and sell his own pulleys, and thereafter the plaintiff brought this suit upon the ground that the pulleys made and sold by defendant simulated the ones made by plaintiff, and amounted to unfair competition. The decree of the trial court was favorable to the defendant, and the plaintiff appealed.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Theodore J. Geisler.*

For respondent there was a brief with oral arguments by *Mr. Loyal H. McCarthy* and *Mr. Earl C. Bronaugh.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The complaint, in effect, charges that the size and general outward appearance of the block made by defendant, the number 1118 on the shell of the block,

making the parts of the pulley interchangeable with the corresponding parts of plaintiff's make, and coloring the sheaves red, constituted the elements of simulation. The pulleys specifically mentioned in the complaint and received in evidence as exhibits are plaintiff's No. 18 and defendant's No. 1118, although each party manufactured different sizes.

The shell of the block numbered 18 by plaintiff is solid so as completely to cover one-half the side of the sheave. The mold in which the shell of the pulley block is cast is so made that across the face of the shell, in raised letters and figures, the following plainly appears: "Columbia 18 Extra Skookum, Pat. Dec. 5, 1905"—and raised in a similar manner, for the purpose of reinforcing the shell, a band or strip extends from the hub along the middle of the shell and to the shackle.

The pulleys manufactured by defendant are placed on the market with two styles of pulley blocks. One block has a solid shell covering more of the side of the inclosed sheave than does No. 18 made by the plaintiff; and across the face of this shell in raised letters and figures much more distinct than in No. 18 the following appears: "Mallory's Steel Block No. 1118." The other style made by defendant has an open or skeleton shell. The defendant has a copyrighted trademark thus ⟨M⟩. On the face of this skeleton shell plainly appears the trademark ⟨M⟩ and the number 1118. The manner in which this skeleton shell is reinforced, when compared with the reinforcement appearing on No. 18, is a matter of contrast, rather than comparison. The trademark used by defendant is indented in the rim of the sheave. As is to be expected, the functional parts of all the pulleys

75 Or.—35

are similar. The defendant manufactured different grades of sheaves and, like plaintiff, used different colors to designate the grades. Mallory explains the use of red by saying that notwithstanding he suggested yellow for the manganese sheaves, the machine-shop, where the first blocks were made, painted them red. He is corroborated by Mathew Walch, who testified that he was connected with the machine-shop mentioned; that "Mr. Mallory suggested yellow for the manganese, but we didn't like the color, and we painted them red, without any further notice." The plaintiff was the only other dealer that painted manganese sheaves red.

1. The plaintiff also objected to the extended hub adopted by defendant, but the uncontradicted evidence is to the effect that pulleys having an extended hub were first made by C. B. Borquist, a pulley manufacturer. The defendant has distributed catalogues and advertised extensively, and his pulleys are advertised as "Diamond 'M' Blocks." It appears from the catalogues issued by defendant that at the bottom of each page is the printed direction "order by number," and that different numbers designate different pulleys, as shown by the cuts, some of the numbers being 1112, 1018, 1218, 1134, 1234, and 1118.

The defendant, who is a subsequent manufacturer, cannot palm off his goods as those of his rival, the plaintiff, and escape the restraining hand of equity. It is not necessary to show by specific instances that purchasers have actually been deceived; but a court of conscience is justified in stamping the brand of commercial piracy upon the wares of defendant if he puts them upon the market in such form and manner as to deceive the purchasing public into the belief that such wares were made by plaintiff: *Fuller* v. *Huff,* 104

Fed. 141, 144 (43 C. C. A. 453, 51 L. R. A. 332); *Duniway Publishing Co.* v. *Northwest Printing Co.,* 11 Or. 322 (8 Pac. 283).

"Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, for the beauty and tastefulness of their inclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals": *Coats* v. *Merrick Thread Co.,* 149 U. S. 562, 566 (37 L. Ed. 847, 13 Sup. Ct. Rep. 966, 967).

The rule is even more stringent than thus far stated, for the doctrine of probability prevails. A terse statement of the scope and extent of the rule governing unfair competition is found in 38 Cyc. 773:

"In order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of the plaintiff, or to deal with defendant thinking he was dealing with plaintiff. It is sufficient to show that such deception will be the natural and probable result of defendant's acts. But either actual or probable deception and confusion must be shown; for, if there is no probability of deception, there is no unfair competition. In close cases, where the deceptive tendency is not clear, equity will withhold its hand until actual deception has resulted. Mere possibility of deception is not enough."

If it is probable that the ordinary buyer in the ordinary course of business will be deceived into buying the pulleys of defendant with the belief that he is purchasing the pulleys of plaintiff, then equity, in the interest of common business honesty and integrity, will interpose a restraining hand: *McLean* v. *Fleming,* 96

U. S. 245, 251 (24 L. Ed. 828). No hard-and-fast rule can be laid down by which to determine what conduct will amount to unfair competition, because it is to a large extent a question of fact; the ultimate test being whether the public is likely to be deceived.

2. The evidence does not disclose a single instance of actual deception. It is difficult to understand how anyone could be misled if he ordered from the catalogue of defendant, because the catalogue makes prominent the fact that defendant manufactures <◇M◇> Logging Blocks. Two cuts of pulley No. 1118 are shown, and at the top of the page in display type is printed "Diamond M Trip Line Blocks."

The pulleys in dispute are used chiefly and almost exclusively in logging operations. No logger who testified said that the color of the sheave carried with it, in his mind, any suggestion of the origin of the sheave. Most of the loggers testified that they paid no attention to the color. The primary object of painting the sheaves red was to denote manganese as the quality: *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.,* 138 U. S. 547 (34 L. Ed. 997, 11 Sup. Ct. Rep. 396). From a consideration of the evidence, the most that can possibly be said is that the trade came to know red sheaves as being made of manganese. Anyone had the right to manufacture manganese sheaves.

The person buying upon inspection is served with notice of the origin of the pulley the moment he looks at the shell, because he could not help seeing the words "Mallory's Steel Blocks" on one shell and <◇M◇> prominently displayed on the other; and on the full width of the rim of the sheave appears the indented trademark used by the defendant.

The essence of the whole inquiry is whether deception is likely or probable. From the evidence sub-

mitted we conclude that deception is not likely or probable.

3. Complaint is also made because defendant advertised: "Our sheaves and pins fit your old blocks." The making and selling of repair parts for other logging pulleys is not an act of unfair competition, if there is no deception, and if the goods are not put out as the goods of another. The sheaves and pins mentioned plainly refer to "our" or the sheaves and pins made by Mallory, and not made by some other dealer: *Bender* v. *Enterprise Mfg. Co.,* 156 Fed. 641 (84 C. C. A. 353, 13 Ann. Cas. 649, 17 L. R. A. (N. S.) 448).

The decree is affirmed.                    Affirmed.

Mr. Chief Justice Moore, Mr. Justice McBride and Mr. Justice Bean concur.