Submitted on briefs June 19, affirmed July 31, 1923.

## UNION FISHERMEN'S CO-OP. PACKING CO. *v.* POINT ADAMS PACKING CO.

(217 Pac. 642.)

**Evidence—Judicial Notice of Common Size of Salmon Cans.**

1. The Supreme Court takes judicial notice that the "one-pound flat," containing fifteen and one-half ounces, is a common size of salmon cans in most of the Pacific Coast canneries.

**Trademarks and Trade Names and Unfair Competition—Color cannot be Monopolized, but Use of Labels of Same Color as Competitor's may be Considered in Determining Whether User is Attempting to Pass Off Its Goods as Those of Competitor.**

2. Any cannery may use on its cans the same color of labels used by a competitor, as no one can monopolize a color; but such use may be considered, with other similarities, in determining whether it is attempting to pass off its goods as its competitor's, especially when the former are inferior in quality.

**Pleading—General Demurrer Admits Allegations of Complaint.**

3. A general demurrer to the complaint admits the allegations thereof.

---

2. Use of color as infringement of trademark or unfair competition, see note in 18 Ann. Cas. 1034.

Use of another's trademark, or insignia not technically a trademark, for advertising purposes as unfair competition, see note in L. R. A. 1915B, 889.

**Trademarks and Trade Names and Unfair Competition—Labels on Salmon Cans Held not so Similar to Those of Competitor as to Amount to Unfair Competition.**

4. Labels on salmon cans containing the word "Salmon" in a different position and embossed in different colors than the same word on a competitor's label, a printed caution to empty the can immediately on opening, also in a different position and in different lettering, a standard cut of a salmon, the canner's name plainly on a similarly colored scroll and the picture of a peacock spreading its tail, *held* not so imitative of such competitor's labels, which contained a vignette of a fisherman drawing in his net, the gilt-embossed word "Salmon" on the scroll immediately beneath, the words "Gillnetter's Best," similarly embossed, immediately above, and a large and conspicuous scroll at the right end with the competitor's name and location of its cannery thereon, as to amount to unfair competition.

**Evidence—Common Knowledge That Purchasers Do not Examine Labels on Cans but Call for Particular Brand.**

5. It is a matter of common knowledge that the wholesaler purchasing from a cannery or a jobber purchasing from a wholesaler does not examine the labels on the cans, but calls for a particular brand from a particular cannery, and has his remedy if an inferior article is furnished him; nor does a retail buyer usually call for a can having a particular label rather than for a particular brand.

**Trademarks and Trade Names and Unfair Competition—Rule in Unfair Competition Cases More Liberal Than in Copyright Infringement Cases.**

6. There is a more liberal rule in cases of unfair competition than in those of infringement of copyrights, which may be merely a technical wrong, while the former appeal to the chancellor's conscience, not only in the interest of the general public, but in that of a manufacturer, who has a property interest which a rival cannot detract from by passing off his own goods for those of his competitor, especially where the former are of inferior quality.

**Trademarks and Trade Names and Unfair Competition—Actual Deception Need not be Shown—Proof That Deception will be Natural and Probable Result Being Sufficient.**

7. To make out a case of unfair competition, it is not necessary to show that anyone has been actually deceived by a competitor's conduct and led to purchase his goods in the belief that they are those of another, it being sufficient to show that such deception will be the natural and probable result; but either actual or probable deception and confusion must be shown, a mere possibility thereof being insufficient.

**Trademarks and Trade Names and Unfair Competition—Purchaser must Exercise Reasonable Care in Examining Goods.**

8. That a purchaser must exercise reasonable care in examining the goods to ascertain that he gets what he wants is a test applicable in considering whether there was deception of the ordinary purchaser by alleged unfair trade.

From Clatsop: J. U. Campbell, Judge.

In Banc.

This is a suit in which the plaintiff sought to enjoin the defendant from the use of certain labels on salmon cans, which plaintiff claims were so imitative of the labels used by plaintiff as to amount to unfair competition.

Plaintiff alleges: That the defendant is engaged in the business of packing and canning salmon and other food fish at Hammond, near Astoria, Oregon, the business having been, and now being, competitive with the business and enterprise of the plaintiff; that plaintiff, ever since the first day of June, 1898, has been, and now is, the manufacturer and vendor of an article of food known as canned salmon; that ever since about that date plaintiff has offered for sale and sold, and still offers for sale and sells, such canned salmon to dealers and merchants generally, both in interstate and intrastate commerce, in various shaped and sized tin cans; that two of the shapes of the cans so used by the plaintiff are of a flat, round shape, one of them containing fifteen and one-half ounces and the other containing seven and three-quarters ounces, respectively, and the two particular sizes and shapes of cans are known to the trade as "one-pound flats" and "half-pound flats." (Then follows a description of the cans); that for the purpose of guarding against fraudulent imitations of plaintiff's canned salmon, and to authenticate the genuineness of goods of its manufacture, plaintiff caused, and still causes, each one of the cans containing its canned salmon to be labeled with its own proper device and trademark, one of them, known as

"Gillnetters Best," having been adopted by plaintiff for that purpose in June, 1898, the particular label, marked Exhibit A, having been, and still being, used on one-pound flats; the particular label, marked Exhibit B, having been, and still being, used on one-half pound flats. (A further description of the labels will be found in the opinion.)

It is further alleged: That these labels are duly recorded in the United States Patent Office, as required by law, and that a certificate was duly issued certifying to the registration by the plaintiff of the trademark and trade name "Gillnetters Best"; that by reason of the long experience and great care of plaintiff in its business, and in the preparation of its goods, and in the good quality of the same, the article prepared by plaintiff became, and still is, widely known to the trade in the communities generally where it is sold as a valuable, wholesome and palatable article of food, and has acquired a high reputation as such, and has commanded an extensive sale, at Astoria and elsewhere, both in interstate and intrastate commerce.

The complaint further alleges that one Thomas Nelson was employed by plaintiff at intervals for twelve years, five years as secretary and seven years as general manager of plaintiff corporation, including its salmon cannery at Astoria, Oregon, and its general business affairs and the merchandising and sale of its various products, and that by reason of his employment he had full and complete knowledge of all the matters alleged in the complaint; that on or about February, 1921, Thomas Nelson failed to be reappointed as such manager and left plaintiff's employ; that he is a large, or one of the principal, stockholders of the defendant corporation; that in

February, 1922, he entered the employ of the defendant corporation as its general manager and that ever since that time he has acted, and is now acting, as its general manager; that, notwithstanding the long and quiet use and enjoyment by plaintiff of such names, devices, trademarks, labels and wrappers, the defendant knowingly, willfully, wrongfully and unlawfully, during the year 1920, the exact date being unknown, fraudulently prepared and offered for sale, and still prepares and offers for sale, at the town of Hammond and elsewhere throughout the State of Oregon, both in interstate and intrastate commerce, an article in imitation of plaintiff's article, which, with intent to deceive and defraud the public and the buyers and consumers thereof, and to injure and defraud the plaintiff, it has put up in similar round shaped tin cans, labeled with nearly similar labels, devices, trademarks and wrappers, of which false and nearly similar labels, devices, trademarks and wrappers copies are annexed to the complaint, which annexations are copies of the alleged spurious labels and article known as the ''Peacock Brand,''—Exhibit E being a copy of the spurious label known as the ''Peacock Brand'' and used by defendant on one-pound flats, and Exhibit F being a copy of the spurious label known as the ''Peacock Brand'' and used by defendant on half-pound flats; that said imitations and counterfeits are calculated to deceive the purchasers and consumers of plaintiff's article and actually have misled, and do still mislead, many of them to buy the article offered for sale and sold by defendant in the belief that it is the article manufactured by the plaintiff, to the great diminution and damage of the business and profits of the plaintiff;

that the alleged wrongful acts are but the carrying out of base, surreptitious and fraudulent designs on the part of the defendant, which it long ago conceived, for the purpose of drawing plaintiff's trade to itself by the wrongful, intentional use of fraudulent imitations of plaintiff's labels, devices, trademarks and wrappers, and that the use thereof by defendant constitutes, and is, not only an infringement of plaintiff's lawful labels, but also a fraud and deception upon such of the citizens of the State of Oregon, and of the United States, and of the world at large as purchase the same, believing it to be the genuine article manufactured by plaintiff, and also unfair and unlawful competition on the part of defendant, which, if continued, will cause irreparable loss and injury to plaintiff; that the article so prepared and put up and sold by defendant, in imitation of plaintiff's article, is a greatly inferior article and that the general reputation of the article manufactured by plaintiff has been greatly injured, to the damage of the business and profits of the plaintiff; that thereby plaintiff has been damaged in the sum of $25,000.

Then follows a prayer that the defendant be restrained from continuing in the future so to imitate plaintiff's labels and other marks, and for an accounting of the profits made by reason of such imitation, and for the further sum of $25,000; and for such further relief as may seem meet and equitable.

A general demurrer to the complaint being sustained by the court and an order dismissing the suit having been made, plaintiff appeals from such order to this court.                                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Norblad & Hesse.*

For respondent there was a brief over the name of *Messrs. G. C. & A. C. Fulton.*

McBRIDE, C. J.—It is impracticable to reproduce in this opinion any drawing which will convey to the eye a picture of the resemblances and dissimilarities of the labels in dispute. Plaintiff's Exhibit "A" is a label for a fifteen and one-half ounce can and consists of a strip of paper approximately twelve and three-fourths inches in length by two inches in breadth, colored an ultramarine blue, with a gilt border one eighth of an inch in breadth, the first two and one-half inches of the label being occupied by the picture of an ancient fisherman, clad in a light brown jacket, and engaged in drawing in his net. To the immediate left of the picture and beginning at almost the extreme left end of the label are the words "Spring Catch," and at the immediate right are the words "Royal Chinook," and underneath, in small capitals, the words "Reg. U. S. Pat. Off. No. 75461." Above the picture appear in large gilt capitals the words "Gillnetters Best," and upon a vermilion scroll, with a fancy, ornamental border of gilt, appears embossed in large capital letters of cream white the word "Salmon." About an inch to the right of the vignette which incloses and adorns the picture of the ancient fisherman, and about one half an inch below the gilt border of the label, and about three fourths of an inch apart, appear gilt representations of two gold medals, approximately three fourths of an inch across. Beneath the first of these, in small capitals, is the legend,

"Awarded
Gold Medal St. Louis
Exposition 1904,"

and beneath the second appears the legend,

"Awarded
Gold Medal Lewis & Clark
Centennial Exposition
Portland 1905."

Immediately beneath the first of these medals appears, in large capitals, the injunction,

"Empty Contents
Immediately After Opening,"

and immediately after these words the word "Salmon," embossed in large gilt capitals, with the name of the printer in small gilt capitals, together with the words "Portland, Oregon," partly below the word "Salmon" and partly underneath the picture of a salmon, to which we shall hereafter advert further.

The next thing that attracts the eye is a picture of a Chinook salmon with his head about three fourths of an inch to the right of the second medal and about level with the upper quarter of it, poised at an angle of about thirty-five degrees and diagonally down across the picture until the ventral fin is about one fourth of an inch above the lower gilt border of the label, thence curving upward about an inch and terminating in the tail fin. Immediately over the head of the salmon are the words, "Net Weight 15½ oz." in small capitals, printed in black ink, and immediately to the right of this and extending from above the dorsal fin to a point above the tail are the words "Fancy Columbia River," the word "Fancy" being printed in small black capitals and the words "Columbia River" being embossed in larger capitals of cream white with a very narrow gilt border. The

last figure on the label is a vermilion scroll, approximately three inches in length by three fourths of an inch in breadth, vignetted by gilt, with standards at each end, difficult to describe, but giving the general impression of a longitudinal section of an old-fashioned bedstead with a red bed included. Upon this vermilion section is printed in white capitals the legend,

> "Packed By
> Union Fishermens Co-operative
> Packing Co.
> Astoria, Oregon."

Immediately above this scroll and between the head and foot boards of the "bedstead" is embossed in large gilt capitals the word "Salmon," and underneath is printed in black capitals, "Every Can Guaranteed."

We are aware that this imperfect description fails to convey a wholly adequate mental picture of the label of plaintiff, but it is as near as can be given without reproducing the label in colors, which is necessarily impracticable.

We come now to Exhibit E of the complaint, which is defendant's label for "one-pound flats," and which is claimed as an imitation of plaintiff's label. The size and length of the label, its color and border, are practically identical, but in place of the ancient fisherman within the vignette we find a picture of a peacock with a tail spread of approximately one and five-eighths inches, the bird standing upon a bright yellow ground, and immediately above the picture the words,

> "Peacock
> Brand,"

the word "Peacock" being embossed in gilt capitals, and the word "Brand" being printed in small black

capitals immediately underneath. The vignette of plaintiff and the peacock of defendant are so radically dissimilar that even a casual glance would distinguish one from the other.

Continuing our examination, from left to right, we find an entire blank in the upper two thirds of defendant's label, which space is occupied in plaintiff's label by the two medals and the legends underneath them. The lower third of defendant's label at this point has the legend,

> "Fancy Royal Chinook
> Columbia River
> Salmon";

the words "Fancy Royal Chinook" being printed in small black capitals and the word "Salmon" being embossed in larger capitals in light maroon, the whole legend being enclosed at each end by a gilt peacock feather one half an inch in length, the whole being essentially different to the eye from the corresponding legend on plaintiff's label.

Continuing to the right, we find at a distance of approximately one third of an inch below the upper border of defendant's label the legend in large capitals, "Net Weight 15½ oz." These capitals are perhaps double the size of those on plaintiff's label but occupy about the same relative position on the label. About one third of an inch below the center of the above legend is a gilt bracket, or scroll work, and beneath this is the legend,

> "Empty
> Contents
> Immediately
> After Opening."

To the right of this legend and occupying relatively the same position as on plaintiff's label is a picture

of a Chinook salmon in the same attitude as on plaintiff's label and so nearly resembling plaintiff's picture that it might be taken to have been printed from the same cut. There is a slight difference in the shading of the back, but this is only perceivable upon close examination. Immediately under the pectoral fin are the words, "Spring Catch," and above and immediately to the right of the caudal fin is the legend,

"Fancy
Columbia
River,"

in small black capitals, and to the right is the legend,

"Royal Chinook
S A L M O N
Finest Quality."

The words "Royal Chinook, Finest Quality" are printed in small dark capitals, and the word "Salmon" is embossed in rather large gilt capitals. Immediately below this is a scroll two inches in length by over one half an inch in breadth in the center, grooved or indented at each end approximately into a half-circle, reducing the width near the ends to about one-fourth of an inch, and these indentations are filled by the picture of a peacock feather in gilt. The scroll has a very narrow gilt border. Inside of this scroll, on a vermilion background, appears the legend,

"Packed by
Point Adams Packing Co.
Hammond, Oregon,"

printed in small white capitals.

The labels for the smaller cans have corresponding similarities and dissimilarities, but it is impracti-

cable to describe them here. The two here described will serve as a type.

Having thus attempted to give a word picture of the two competing labels, we will endeavor to point out, first, the similarities between them, and thereafter the marks that distinguish them.

1–4. The first similarities are the size, shape and color of the labels. In these respects the labels are identical. The size is almost necessarily the same, due to the size of the cans, which, we take judicial notice, is a common size in most of the canneries on the Pacific Coast. The color of the labels is one which any cannery has a right to use, as nobody can monopolize a color, although it may be considered in connection with other similarities in determining whether defendant is so using it to pass off its goods as the goods of its competitor, and especially when, as here admitted by the demurrer, its goods are an article inferior in quality to those of its competitor. The word "Salmon" occurs in both, but nobody contends that this word can in itself constitute unfair competition, and in the present instance this word is placed in a different position and embossed in different colors upon defendant's label. The caution to empty the can immediately upon opening is one commonly found on all canned goods, and in the present instance is not placed upon defendant's label in the some position or with the same lettering as upon plaintiff's labels. The picture of the salmon is identical and placed almost on the same place on both labels, but an examination of the labels filed for copyright and upon the shelves of our merchants here shows that the cut of a salmon is a favorite device and common to most salmon labels, and in some the fish is shown practically in the same attitude as here, although the same blue background has not been

noted. It seems to be a standard cut. At a glance there is a similarity in the vermilion scrolls, but, as will be seen by a comparison of the descriptions, there are essential dissimilarities in size and construction and the name of the defendant appears plainly upon the scroll of its label.

The dissimilarities are so marked that it would seem that a person of ordinary observation, buying by brand, could not fail to distinguish between plaintiff's brands and those of defendant. The difference between the vignette of the fisherman drawing in his net and the peacock spreading its tail, the vermilion scroll immediately beneath the vignette with the gilt embossed word "Salmon," both of which are absent from defendant's picture, are matters which would serve at once to attract the attention and remain in the memory of the purchaser. The words "Gillnetters Best," immediately above the vignette and similarly embossed and conspicuous, are catchwords that would be retained and their absence noted. The medals would also be likely to be noted and remembered, and the large and conspicuous scroll at the right end of the label, with the plaintiff's name and the location of its cannery upon it, are matters which would be likely to attract the attention of a retail buyer.

5. It is a matter of common knowledge that the wholesaler purchasing from a cannery, or a jobber purchasing from a wholesaler, does not purchase by examining the labels on the cans. He calls for a particular brand from a particular cannery and has his remedy if an inferior article is furnished him. His purchase is more by the name of the manufacturer and his knowledge of his wares than by any other circumstance. Neither does the retail

buyer usually go into a store and say, "I want to purchase a can of salmon that has a blue label." If he knows anything about salmon and has had favorable experience with any particular brand he calls for that brand, and if he has ordinary powers of observation and exercises them he takes some care to see that he gets it.

6. Counsel for appellant has presented a very able brief, and the distinction made by him between cases involving unfair competition and those involving technical infringement of copyright are so clearly drawn that the temptation to discuss them is great, but space forbids. It may well be conceded that there is a more liberal rule in cases of unfair competition than in those of infringement of copyright, which latter are merely a branch of the general law relating to unfair competition. The reason for this is that infringement of copyright may be in many cases merely a technical wrong, while cases of unfair competition always appeal to the conscience of the chancellor, not only, as some courts say, in the interest of the general public, but also in the interest of a manufacturer who has a property interest in his business, which a rival has no right to detract from by passing off his own goods for those of his rival, and especially where the goods so passed off are of an inferior quality.

7. Counsel for appellant has alluded to the confused state of the decisions as to what constitutes the test of unfair competition. As stated, there is a very great divergence in the authorities, and we feel ourselves safe in adhering to the test laid down by this court in the case of *Columbia Engineering Works* v. *Mallory*, 75 Or. 542, 547 (147 Pac. 542, 544), in which we said, speaking through Mr. Justice HARRIS, who

quoted with approval the following excerpt from 38 Cyc. 773:

"In order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of plaintiff, or to deal with defendant thinking he was dealing with plaintiff. It is sufficient to show that such deception will be the natural and probable result of defendant's acts. But either actual or probable deception and confusion must be shown, for if there is no probability of deception, there is no unfair competition. In close cases, where the deceptive tendency is not clear, equity will withhold its hand until actual deception has resulted. Mere possibility of deception is not enough."

In that case, which was quite as strong for the plaintiff in many of its features as the case at bar, we examined the authorities with great care and find no reason to deviate from the test there prescribed.

8. For a test as to what constitutes an ordinary buyer we turn to *Mueller Mfg. Co.* v. *A. Y. McDonaly & Morrison Mfg. Co.*, 164 Fed. 1001, 1003, where it is said:

"A purchaser of goods is required to exercise reasonable care in examining them to ascertain that he gets what he wants. * * *"

We are of the opinion that such a person, exercising such care, would not be beguiled into purchasing defendant's goods under the impression that they were the goods of plaintiff.

The decision of the Circuit Court is affirmed.

AFFIRMED.