## NEIL C. SMITH v. MINNEAPOLIS SECURITIES CORPORATION.[1]

January 9, 1942.

No. 32,981.

[1]Reported in 1 N. W. (2d) 841.

*Clarence O. Holten,* for appellant.
*Richard Converse,* for respondent.

HOLT, JUSTICE.

After verdict for plaintiff, defendant moved for judgment or a new trial. From the order denying the motion, it appeals.

The evidence disclosed that defendant, a corporation, is in the business of discounting commercial paper and contracts. It is located in Minneapolis. Another corporation, the C. W. Howard Company, was engaged in the business of servicing large employers of labor by undertaking to instruct the help by furnishing printed matter teaching how the services would be more efficient and profitable to employers. One Brownson, in the employ of the Howard company, originated or produced the literature furnished the employers. Plaintiff was the salesman who secured most of the contracts from the employers. These two men had been with the Howard company for some time, plaintiff from June 1935 and Brownson from October of the same year, with the exception of the period from September 1936 to April 1937. During that time, one Colfelt was the president and general manager of the Howard company. These contracts procured by plaintiff for the Howard company ran for several months in the future, payments thereon accruing at stated intervals. From the start, these contracts were discounted by defendant, who paid therefor 67 per cent of their face value in cash, with 30 per cent reserved until fully paid, 3 per cent being the discount. Toward the end of 1938, plaintiff, who was mostly on the road, found that checks issued to him by the Howard company for his expenses were dishonored for lack of

funds. He returned to this state, and it was discovered that spurious contracts in large amounts had been discounted by defendant for the Howard company. It was ascertained that a $59,000 loss would result to defendant therefrom. The record indicates that Colfelt, the president and manager of the Howard company, was the wrongdoer. Mr. Packard, defendant's active vice-president and general manager, had conferences with Brownson, plaintiff, and Hollingsworth, who had temporary charge of the Howard company, about what could be done to retrieve the loss. Since the device originated by Brownson seemed to have found a profitable market in the hands of an experienced and energetic sales agent, it was planned to place the Howard company in receivership, meanwhile continuing its business of procuring contracts for services. If the venture succeeded, the profits would first be devoted to wiping out defendant's $59,000 loss; thereafter the profits were to be equally shared between defendant, Brownson, and plaintiff. Before plaintiff would go on with this employment or new venture, he demanded that defendant agree to pay him the commissions earned for the contracts procured for the Howard company. And his evidence was that on January 6, 1939, defendant, by Packard, its active vice-president and general manager, in consideration that plaintiff continue to procure these contracts, agreed to pay plaintiff the amount he had coming from the Howard company, *viz.*, $903.81 accrued commissions, $1,123.94 deferred commissions, and $105 hotel expenses. That thereupon plaintiff started out to procure new contracts under a new arrangement with defendant as to the commissions he was to receive and the advancements for expenses the defendant would make.

The main contention of defendant is that the verdict is manifestly against the preponderance of the evidence and contrary to law. Plaintiff and Packard were the only persons present when the alleged contract of January 6, 1939, was made. The one asserts it was made and the other denies it. There was no writing signed. A letter from plaintiff to Packard, mailed a few days

later, exhibit N, and the answer thereto, exhibit M, may be said to corroborate the testimony of defendant rather than that of plaintiff; but the inferences from what is stated and not stated in those letters were for the jury. There was some corroboration of plaintiff's testimony in that of Brownson, as well as in the cross-examination of Packard. It cannot be said that the evidence does not adequately support the verdict, nor that it is contrary to law.

Defendant also urged at the trial, and here, that the agreement to pay plaintiff what the Howard company owed is within the statute of frauds. Mason St. 1927, § 8456(2). But plaintiff's proof was that, in consideration of plaintiff's continuing to sell for defendant the sort of contracts theretofore sold for the Howard company, defendant would pay what the Howard company owed him. This consideration moving to defendant makes the promise an original undertaking. "A promise to pay the existing debt of another, which promise arises out of a new transaction and for which there is a fresh consideration, is an original undertaking and is not within the statute of frauds." The Marckel Co. v. Raven, 186 Minn. 125, 127, 242 N. W. 471, 472; Rolfsmeyer v. Rau, 198 Minn. 213, 269 N. W. 411. The expected consideration of defendant was the recouping this $59,000 loss sustained from discounting spurious contracts. Plaintiff did continue to sell contracts for defendant's account, but, owing to unexpected federal legislation, employers of labor hesitated to contract for the services theretofore purchased, and the venture was not a success.

The grounds of motion for a new trial were that the court erred in refusing to allow defendant to show that plaintiff had been paid $1,617.66 to apply on his alleged cause of action; and for "errors at law occurring during the trial of said cause and duly excepted to at the time by the defendant." As to the first error above stated, defendant, just before resting, offered a number of checks aggregating $1,943.59, paid plaintiff by defendant during the period from January 6, 1939, to December 31, 1939, as commissions earned and advances made to him under his alleged

agreement with defendant. Plaintiff objected that the facts stated in the offer were insufficient, as a matter of law, to constitute either a defense, counterclaim, or setoff, and that the facts embraced in the offer were irrelevant. The objection was sustained. There was no exception. The same thing happened in respect to such checks as set out on page 198 of the printed record. As to the last mentioned error, since exception was not taken to any ruling at the trial, such ruling is not reached by any assignments of error in this court, except those hereinbefore disposed of. Under established practice, the alleged errors are unavailing to defendant in this court.

There is one more contention of defendant that should be considered, *viz.,* that the agreement to pay the debt of Howard company to plaintiff was so connected with the new business to be done after January 6, 1939, including the acquisition by defendant of the Howard company assets, that the contract was entire and not severable. We think Mr. Packard, on his cross-examination, gave a very clear statement of the agreement in respect to plaintiff's continuing to procure contracts, in consideration for the promise to pay plaintiff what was due him from the Howard company. Speaking of the checks given plaintiff by defendant under the new agreement:

"Those checks in connection with our commission arrangement were to advance to him certain advances which we were to take care of during the period he was working, which would be charged against his commission account which would be earned and accrued. * * * In other words, it was an arrangement made he was to receive certain amounts every week or month, but periodically, to carry on in his operations."

It is clear that this new arrangement and the money paid for commission on contracts obtained thereunder cannot be applied upon defendant's agreement to pay plaintiff what was due from the Howard company. The agreements were severable. Performance of the new was entered upon by both parties. Its success as

anticipated was not a condition precedent to the agreement to pay plaintiff what he had coming from the Howard company.

The order is affirmed.