# WINSTON AND NEWELL COMPANY v. PIGGLY WIGGLY NORTHWEST, INC.[1]

February 21, 1946.

No. 34,123.

*John J. Fee* and *Whipple & Atmore,* for appellant.

*Maurice M. Moore, Paul, Paul & Moore, Leavitt R. Barker, William L. Prosser,* and *Dorsey, Colman, Barker, Scott & Barber,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to enjoin defendant from using a coffee bag which it claims is a simulation of one long used by it. The complaint alleges that plaintiff is a wholesale grocer and that it roasts and

[1]Reported in 22 N. W. (2d) 11.

packs coffee known as "Red Rooster" brand, which has acquired an enormously valuable reputation and good will, and that "the purchasing public has associated the style, dress, wording and coloring of plaintiff's coffee bags with plaintiff and as its product." Plaintiff was granted certificates of trademark registration by the state of Minnesota registering the words "Red Rooster" both for coffee and as used upon coffee; but the present action is not for infringement of the trademark, but for unfair competition. Its claim is that defendant by the use of its bag is guilty of unfair competition for the reason that thereby defendant misleads the public to buy its coffee as that of plaintiff.

Defendant is a chain-store operator of self-serve retail grocery stores. For about two and one-half years, it bought "Red Rooster" coffee from plaintiff at wholesale, which it resold at retail in its stores. In December 1943, it discontinued handling plaintiff's coffee. A few months thereafter, it commenced to handle a brand known as "Roaster Fresh" coffee, which was specially blended and roasted for it. It denies that the bag it uses is a simulation of plaintiff's bag. The parties made their bags a part of their respective pleadings. Both parties moved for judgment on the pleadings. Bags of each party were produced at the hearing on the motion below and on the argument here. Plaintiff's motion was granted, and defendant's was denied. Defendant appeals.

As was said of the bottles and cartons similarly before the court in Richmond Remedies Co. v. Dr. Miles Medical Co. (8 Cir.) 16 F. (2d) 598, 603, the bags were "physical items, which characterize, qualify, and limit the allegations of the bill [here, the complaint]. They constitute the concrete embodiment of those allegations."

The bags contain one pound of coffee. They are the same in size and shape. The face and the back have a surface about 7½ by 3⅜ inches.

Plaintiff's bag is made of a smooth, glazed paper. It is dark red in color. A little above the middle there is a circular disk about 3¾ inches in diameter in gold color having a metallic luster. In the disk in heavy black lettering are the words "Red Rooster

Coffee" in three separate lines. The words "Red" and "Rooster" are in capital letters and in print, and the word "Coffee" is in script and curves upward to the right. In the upper left-hand part is a red dot, and at the lower right is a black rectangle containing the figure of a red rooster. Beneath the disk in small black print are the words "A flavor worth crowing about." Extending from the top to the bottom at the right side is a printed band, broken by the circle and rectangle, consisting of two black lines with a white one between them. In the lower left-hand corner of the bag in fine white print are the words "Roasted and Packed by Winston and Newell Company Minneapolis, Minn. One Pound Net Weight Trade Mark Registered." On each side of the bag is a gold band with the words "Red Rooster Coffee" in heavy black print. On one side is an admonition to send for a booklet containing coffee-making directions, and, on the other, one to tell the grocer what method the customer uses to make coffee and that he (the grocer) would then grind "this" coffee correctly.

Defendant's bag is made of paper having fine corrugations running lengthwise. It also is red in color, but not quite so dark as plaintiff's. In the same position as the disk on plaintiff's bag defendant has on its bag a circular disk in fawn color of the same size as that on plaintiff's, but defendant's disk has a notched or indented edge, whereas plaintiff's does not. In defendant's disk in three separate lines are the words "Roaster Fresh Coffee" in heavy black lettering. The words "Roaster" and "Coffee" are in capital letters and in print. The word "Fresh" is between them in script and curves upward to the right. Underneath the disk is a picture of a cup and saucer in white with fawn-color trim filling a space about 2 inches wide by 5/8 of an inch in height. At the top above the disk are the words "Piggly Wiggly" in large capital letters 7/16 of an inch high. An irregular white line emanating from the cup, broken by the disk and the words "Piggly Wiggly," extends to the top. There is no printed band on defendant's bag extending from the top to the bottom as there is on plaintiff's. Underneath the cup and saucer in five lines are the words:

"Specially Blended and Roasted for Piggly Wiggly Northwest, Inc. Duluth, Minnesota One Pound Net Trade Mark." On each side of the bag defendant has identical bands printed in fawn color on which there is printed in heavy black print the words "Roaster Fresh Coffee." Alongside the band are the words "Tell The Clerk What Method You Use To Make Coffee" and "We Will Then Grind This Coffee Correctly." The words "Piggly Wiggly" at the top of the bag can be plainly read at a distance of 20 feet. Those at the bottom to the effect that the coffee is specially blended and roasted for defendant can be plainly read at a distance of five or six feet.

The parties have pointed to what they claim are resemblances and distinctive differences. Plaintiff claims that defendant's bag is similar to its bag in at least 12 respects, and, in addition, that the colors, if not identical, are similar and so arranged and massed on defendant's bag that a purchaser relying on his memory without the aid of a visual or side-by-side comparison would be likely to believe that defendant's bag is in fact plaintiff's. Defendant points to a like number of differences and asserts, as we think correctly, that it has not copied the color of, or any of the words or symbols on, plaintiff's bag. In addition, it asserts that the words "Piggly Wiggly" at the top of its bag and the words at the bottom thereof, that the coffee is specially blended and roasted for defendant, are so prominent as to apprise intending purchasers that they are buying defendant's coffee, not plaintiff's. We do not deem it necessary, therefore, to follow the parties in their respective claims of resemblances and differences. For reasons to be presently stated, we think that defendant was not guilty of unfair competition for the reason that it had apprised intending purchasers that its bags contained its own brand of coffee.

It is important to consider that plaintiff seeks relief not for infringement of a trademark, but for unfair competition by defendant in palming off its coffee as that of plaintiff by means of simulating defendant's bags so as to mislead prospective purchasers into believing that they are getting plaintiff's coffee, when in fact

they are getting defendant's. No one has a monopoly of the color, shape, or size of containers or the lettering on them. A. G. Morse Co. v. Walter M. Lowney Co. (D. C.) 256 F. 935 (red candy box with yellow design and lettering on it); American Tobacco Co. v. Globe Tobacco Co. (C. C.) 193 F. 1015 (red tobacco bag with gilt lettering). Nor may a person appropriate them to his exclusive use as a trademark. Hence, plaintiff has no protected rights in the red, gold, black, and white colors or the lettering on its bags, nor in their size or shape. These were public property, which defendant was free to use.

"A person may copy *with exactness* the unprotected products or articles of another without inflicting legal injury unless he attributes to that which he has made a false origin by claiming it to be the manufacture of another person, in the absence, at least, of such a similarity to some peculiar feature indicating origin as to mislead intending purchasers." (Italics supplied.) 52 Am. Jur., Trademarks, Tradenames, etc. § 114.

We may lay aside plaintiff's tradename in the words "Red Rooster," because these were not infringed by any words used by defendant and because this action is not for infringement, but for unfair competition. In determining whether plaintiff should be granted any relief on the ground of unfair competition, the court should avoid the paradox of holding that a party can have no monopoly in virtue of a trademark in the matters alluded to and at the same time in effect grant him such a monopoly by a decree under the guise of relief from unfair competition. Richmond Remedies Co. v. Dr. Miles Medical Co. (8 Cir.) 16 F. (2d) 598; Trinidad Asphalt Mfg. Co. v. Standard Paint Co. (8 Cir.) 163 F. 977 (affirmed, 220 U. S. 446, 31 S. Ct. 456, 55 L. ed. 536).

The rules against unfair competition, so far as here involved, make it a wrong for a trader or manufacturer to sell his goods in such a manner as to mislead the buying public into purchasing them in the belief that they are the goods of another. The wrong is based upon the deceit of the seller. The gist of unfair competi-

tion is the *deceit* whereby one's patronage is diverted from him to the wrongdoer by the latter's palming off his goods as those of the former or, as it is sometimes said, by pirating or filching the other's trade. Houston v. Berde, 211 Minn. 528, 2 N. W. (2d) 9; Direct Service Oil Co. v. Honzay, 211 Minn. 361, 2 N. W. (2d) 434, 148 A. L. R. 1; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 S. Ct. 609, 49 L. ed. 972; 52 Am. Jur., Trademarks, Tradenames, etc. § 86.

"* * * The deceit, or probable deceit, of the ordinary purchaser to such an extent that he buys, or will probably buy, the property of one manufacturer or vendor, in the belief that they are those of another, is a sine qua non of the maintenance of such a suit [to enjoin unfair competition], because every one has the undoubted right to sell his own goods, or goods of his own manufacture, as such, however much such sales may diminish or injure the business of his competitors." Kann v. Diamond Steel Co. (8 Cir.) 89 F. 706, 707.

The right protected is that of freedom from wrongful interference, with the reasonable expectancy of patronage arising from the favorable disposition of intending purchasers to buy one's goods. This expectancy is the probability that customers will continue to buy goods which they have been accustomed to buy, and is like "good will" as defined by Lord Eldon in Cruttwell v. Lye, 17 Ves. Jr. 335, 346, 34 Reprint 129, 134, which he said is "nothing more than the probability, that the old customers will resort to the old place."

The history of the rules against unfair competition underscores the fact that they rest upon deceit practiced upon the purchaser. First, it was established that an action for deceit as an independent cause of action would lie for a misrepresentation by the party to whom made regardless of any privity of contract between him and the person making it (Pasley v. Freeman, 3 Term R. 51, 100 Reprint 450), and, then, as logical extension of the rule that a deceit was an independent tort, it was held that, where the misrepresentation was as to the source of goods sold, the wrong was at least dual

in nature—that a wrong was done not only to the party to whom the representation was made, but also to the party the source of whose goods was misrepresented, and that the latter could recover for the harm done to him thereby in diverting his trade (Sykes v. Sykes, 3 B. & C. 541, 107 Reprint 834). 25 Eng. Rul. Cas., Eng. Notes, p. 214. As said in Restatement, Torts, p. 539:

"* * * The fraudulent misrepresentation [the passing or palming off of one's goods as those of another] subjected its maker to liability to the purchasers of his goods in an action on the case for deceit. But since the misrepresentation was calculated to cause harm to the competitor even more than to the purchasers, liability to him was also imposed upon the maker of the misrepresentation in an action on the case variously denominated 'action in the nature of an action for deceit,' 'action on the case for a deceit' or 'action for deceit.' Thus the conditions of liability in the later action for 'passing off' were similar to those in the earlier action for deceit, except for the element of reliance by the other [the competitor]."

Conversely, where there is no deceit there is no unfair competition, as where the defendant sells his goods as his own and not as those of the plaintiff. As said in Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 140, 25 S. Ct. 614, 49 L. ed. 986, *supra,* "if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails."

Where, as here, the complaint is that defendant has adopted a dress for his goods simulating that of plaintiff, the resemblance must be so close that it deceives, or is likely to deceive, a customer exercising ordinary care in the making of a purchase of the particular goods, and induces him to purchase defendant's goods in the belief that they are those of plaintiff. 52 Am. Jur., Trademarks, Tradenames, etc. §§ 114, 128. What would otherwise be regarded as a deceptive simulation or resemblance of the dress of goods is not such where it is accompanied by such measures as will reasonably apprise intending purchasers of the source of the goods. Re-

statement, Torts, § 741, *comment j.* In such a case there can be no deceit, for the obvious reason that the intending purchaser either has, or is charged with, knowledge of the facts concerning the goods purchased. In Houston v. Berde, 211 Minn. 528, 2 N. W. (2d) 9, where defendant simulated the name and features of a competitor's store, we held that the prominent use of his own name in connection with that of his store was an adequate measure to guard the public against being misled, and that, because of that fact, he was not guilty of unfair competition. So it is likewise in the case of the wrapping of and labels on merchandise. The most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure on the container, package, wrapper, or label of the manufacturer's or trader's name. When that is done, there is no basis for a charge of unfair competition. Singer Mfg. Co. v. June Mfg. Co. 163 U. S. 169, 16 S. Ct. 1002, 41 L. ed. 118; Coats v. Merrick Thread Co. 149 U. S. 562, 13 S. Ct. 966, 37 L. ed. 847; J. C. Penney Co. v. H. D. Lee Merc. Co. (8 Cir.) 120 F. (2d) 949; Jas. H. Forbes Tea & Coffee Co. v. Ranney-Davis Merc. Co. (8 Cir.) 29 F. (2d) 697; Richmond Remedies Co. v. Dr. Miles Medical Co. (8 Cir.) 16 F. (2d) 598; Trinidad Asphalt Mfg. Co. v. Standard Paint Co. (8 Cir.) 163 F. 977; Centaur Co. v. Heinsfurter (8 Cir.) 84 F. 955; Pope Automatic Merchandising Co. v. McCrum-Howell Co. (7 Cir.) 191 F. 979, 40 L.R.A.(N.S.) 463, *certiorari* denied, 223 U. S. 730, 32 S. Ct. 527, 56 L. ed. 633; Rathbone, Sard & Co. v. Champion Steel Range Co. (6 Cir.) 189 F. 26, 37 L.R.A.(N.S.) 258; John H. Rice & Co. v. Redlich Mfg. Co. (3 Cir.) 202 F. 155, 44 L.R.A.(N.S.) 1057; Stroehmann Bros. Co. v. Manbeck Baking Co. 331 Pa. 96, 200 A. 97; Gessler v. Grieb, 80 Wis. 21, 48 N. W. 1098, 27 A. S. R. 20.

In Allen B. Wrisley Co. v. Iowa Soap Co. (8 Cir.) 122 F. 796, 798, Judge Sanborn said:

"* * * One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examina-

tion of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition."

In Trinidad Asphalt Mfg. Co. v. Standard Paint Co. (8 Cir.) 163 F. 977, 983 (affirmed, 220 U. S. 446, 31 S. Ct. 456, 55 L. ed. 536), holding that the prominent display of a manufacturer's name on an article sufficiently distinguishes it from those of others, the court quoted from Lord Morris's judgment in Reddaway v. Banham, L. R. App. Cas. [1896] 199, 221-222, as follows:

"That, to my mind, is obviously done when the respondents put prominently and in a conspicuous place on the article the statement that it was camel hair belting manufactured by themselves. Having done so, they would, as it appears to me, fully apprise purchasers that it was not Reddaway's make, by stating that it was their own."

In such a case, as Mr. Justice Holmes said in Herring-Hall-Marvin Safe Co. v. Hall's Safe Co. 208 U. S. 554, 559, 28 S. Ct. 350, 352, 52 L. ed. 616, 621, the explanation will "give the antidote with the bane." We think that it goes further; it operates as a prophylaxis entirely immunizing any possible harm to a business rival.

Numerous other cases might be cited to support these views.[2] There are some cases which apparently are contra, but these, unlike the one here, involve situations either where the defendant's name was not prominently disclosed[3] or where a deceptive name

[2]Landis Machinery Co. v. Chaso Tool Co. Inc. (6 Cir.) 141 F. (2d) 800; Monogram Mfg. Co. v. Glemby Co. Inc. (2 Cir.) 136 F. (2d) 961; Rymer v. Anchor Stove & Range Co. (6 Cir.) 70 F. (2d) 386; Estate Stove Co. v. Gray & Dudley Co. (6 Cir.) 50 F. (2d) 413; Id. 41 F. (2d) 462; Gerosa v. Apco Mfg. Co. (1 Cir.) 299 F. 19; Hudson Motor Specialties Co. v. Apco Mfg. Co. (D. C.) 288 F. 871; Upjohn Co. v. Wm. S. Merrell Chemical Co. (6 Cir.) 269 F. 209; Pocket Books, Inc. v. Meyers, 178 Misc. 59, 33 N. Y. S. (2d) 39; Union Fishermen's Co-op. Packing Co. v. Point Adams Packing Co. 108 Or. 535, 217 P. 642.

[3]N. K. Fairbank Co. v. R. W. Bell Mfg. Co. (2 Cir.) 77 F. 869; New England Awl, etc. Co. v. Marlborough Awl, etc. Co. 168 Mass. 154, 46 N. E. 386, 60 A. S. R. 377; George G. Fox Co. v. Glynn, 191 Mass. 344, 78 N. E. 89, 9 L. R. A. (N. S.) 1096, 114 A. S. R. 619.

was adopted for the express purpose of deceiving purchasers.[4] Perhaps all the cases cannot be harmonized. Nor is there any occasion now for undertaking such a task. We think that those which are opposed to the views expressed above are unsound in principle and are opposed to the overwhelming weight of authority. We decline to follow them.

After all, each case depends largely on the application of the rules of law to its particular facts. Here, it is to be remembered that defendant operates so-called self-serve stores, where the customer selects his own merchandise from that on display. Under such circumstances, it is incumbent on the customer to make a reasonable examination of the merchandise to ascertain that he gets the goods he intends to buy.

"The rule is settled that 'equity will not interfere where ordinary attention by the purchaser would enable him to discriminate' between the goods put out by the parties, and that one is not bound to prevent a purchase by a careless purchaser." American Tobacco Co. v. Globe Tobacco Co. (C. C.) 193 F. 1015, 1018, *supra*.

In Coats v. Merrick Thread Co. 149 U. S. 562, 573, 13 S. Ct. 966, 970, 37 L. ed. 847, 852, *supra*, the court said that the customer should either demand the particular brand of product he wants or "is bound to examine such label [here, the bag] with sufficient care to ascertain the name of the manufacturer." Furthermore, we think that experience shows that most customers get what they are after. As we said in the Berde case, 211 Minn. 534, 2 N. W. (2d) 12, *supra:*

"* * * Customers of retail stores are well able * * * to recognize and appraise what they get."

Certainly, a purchaser could not maintain an action for deceit against defendant for palming off its coffee as that of plaintiff for the plain reason that defendant's labeling on the bag apprises him of the true facts. Bailey v. Bode Bros. Co. 195 Wis. 264, 218 N. W. 174.

---

[4] O. & W. Thum Co. v. Dickinson (6 Cir.) 245 F. 609, which is like Nesne v. Sundet, 93 Minn. 299, 101 N. W. 490, 106 A. S. R. 439, 3 Ann. Cas. 30.

On top of all this it is to be further remembered that a customer in a self-serve store of the chain type may well expect to find there goods of the store's own brand. Where he does find such goods in such a store with the store's brand prominently displayed thereon, he knows, or at least he should, that the goods are not those of some business competitor of the store. J. C. Penney Co. v. H. D. Lee Merc. Co. (8 Cir.) 120 F. (2d) 949.

It is hard to believe here that a purchaser in defendant's store, seeing one of its packages of coffee with its name in large print at the top of the face and back, plainly readable for a distance of at least 20 feet, and the smaller print at the bottom to the effect that the coffee contents are specially roasted and blended for defendant, readable at a distance of five or six feet, could believe that the coffee was plaintiff's and not defendant's. The bags speak for themselves and are physical proof that no deceit could result. We think that plaintiff was not entitled to judgment and that defendant was.

Reversed with directions to render judgment in favor of defendant.