### B. B. PEN COMPANY v. BROWN & BIGELOW.

Civ. No. 1523.

United States District Court
D. Minnesota, Third Division.
Aug. 11, 1950.

Lyon and Lyon, and Lewis E. Lyon, all of Los Angeles, Cal. (Paul, Paul & Moore, and Maurice M. Moore, all of Minneapolis, Minn., of counsel), for plaintiff.

Harold Olsen, Chicago, Ill. (Claude R. Beddall and Jack W. Wicks, St. Paul, Minn., of counsel), for defendant.

DONOVAN, District Judge.

Plaintiff brings this action for a declaratory judgment, claiming ownership and right to the use of the symbol, "B. B." It also asks that it be declared as not having engaged in unfair competition with defendant.

Defendant counterclaims ownership and right to the use of the symbol, "B & B". It asks that it be declared the owner thereof, and accuses the plaintiff of unfair competition.

Each party seeks declaratory relief against claimed infringement and the usual "other and further relief" prayed for in this type of case.

It is undisputed that each of the parties hereto have been doing business on a national scale, and that long prior to the entry of plaintiff into the field of advertising and selling ball point pens the defendant was actively engaged in the manufacture and sale of "Remembrance Advertising", for which defendant is widely known. For almost half a century defendant has been engaged in the production of novelties for use as gifts by its customers who purchase its line of advertising. Throughout the intervening years, and as ideas for such novelties developed to fruition, defendant distributed to its trade said advertising novelties, among which were calendars, letter openers, pencils, ball point pens and other advertising media. It should be noted that the novelties were a means to the end of realizing the ultimate sale of defendant's principal item—advertising. In this connection defendant devised, registered, owns and uses the trade-mark, "Redipen". Many of its novelties have the symbol "B & B" upon them. Some of the ball point pens distributed by defendant have the symbol stamped on the metal of the inner part of the pen and concealed by the cover. As early as 1918, defendant sold mechanical pencils with the symbol "B & B" upon them. In 1921, its products included a penholder containing the same symbol, and in 1940, letter openers with the symbol were used in defendant's trade.

In January, 1945, plaintiff began the manufacture and sale of ball point pens, and adopted the letters "B. B." as a symbol therefor. The first sale of plaintiff's pen with such symbol was on January 10, 1947, and from then on it developed into what it claims to be, —"the largest single seller of pens in the world". It operates principally as a wholesaler, selling its products to stores, which in turn retail them to the public. It denies knowledge, as of the time it adopted the symbol "B. B", that defendant marked any article used in its trade with the symbol, "B & B". Plaintiff claims its attention to defendant's symbol was first directed by a letter written by defendant to one of plaintiff's customers. At the trial, plaintiff produced one of defendant's ball point pens with "B & B" stamped thereupon, but contends it cannot be read without the aid of a magnifying glass.

Reduced to the simplest terms of fact gleaned from the evidence, plaintiff is engaged in the manufacture and sale of ball point pens bearing the symbol, "B. B". Its sale is directly to the trade. Defendant has been in the business of "Remembrance Advertising" since its incorporation in 1905, and as an incident thereto it has developed an idea of manufacturing novelties to be given away by its customers as a means of advertising such customers' trade or business. Defendant's symbol, "B & B" is imprinted on such novelties, including ball point pens.

Following the commencement of this suit, plaintiff, on May 21, 1948, and defendant, on June 25, 1948, filed applications for the registration of their respective and

controversial trade-marks with the United States Patent Office. Interference and opposition proceedings followed and are pending. Hence each party is here without benefit of a registered trade-mark. Jurisdiction of this court is established in the premises, and therefore registration is unimportant for present purposes.[1] Registration does not in itself confer any greater rights than existed at common law. At best, it is but a method of recording, for the purpose of serving notice of claims of ownership and informing the public and dealers with reference thereto.[2]

Defendant's claim to its unregistered symbol, "B & B", is bottomed on priority of appropriation, while plaintiff's claim to its unregistered symbol is based on lack of knowledge of the existence of defendant's symbol, and plaintiff's adoption and use of the symbol, "B. B", in good faith. Each party insists it is the owner of a trade-mark which is infringed to such an extent as to result in unfair competition.

The function of a trade-mark is to identify ownership of the article to which it is affixed, and hence it is a symbol of good will. The law of trade-mark stems from the law of unfair competition.[3]

The test of infringement is the presence of deceptive similarity to such an extent as to lead to confusion in the mind of the purchaser in the comparison of the accused trade-mark with the purchaser's assumed memory of the opposing party's trade-mark.[4]

In the present case plaintiff urges the application of the law of unfair competition as decided by the Supreme Court of Minnesota.[5] Defendant insists the case is governed by the Lanham Act and the decisions of the Federal Courts.[6] As I view it, it makes little difference under the applicable decisions whether the Acts of Congress or the law of Minnesota is relied upon, for the reason that in the end the same result is reached.[7]

It appears to me from the evidence in this case that the plaintiff and the defendant are dealing with different classes of trade, and hence there is little likelihood of purchasers who exercise ordinary care becoming confused to such an extent as to purchase the plaintiff's ball point pen, believing it to be an article of the defendant. In applying the test and weighing the possibilities, common sense must prevail over technical niceties. Plaintiff at best is a new competitor, and as such is not held to the obligations of an insurer against all possible confusion to the degree of making the market "fool proof".[8] Defendant is a prior user of the symbol, "B & B" in connection with a type of trade so different from plaintiff's that it is unlikely that confusion will arise from plaintiff's use of the symbol "B. B". The likelihood that even an indifferent purchaser may be misled thereby is so remote that I am convinced there has been no infringement or unfair competition by ei-

1. Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corporation et al., 2 Cir., 105 F.2d 908; Radio Shack Corporation v. Radio Shack, Inc., 7 Cir., 180 F.2d 200.

2. Griesedieck Western Brewery Co. v. People Brewing Co., 8 Cir., 149 F.2d 1019.

3. Seven Up Co. v. Cheer Up Sales Co., etc., 8 Cir., 148 F.2d 909; Griesedieck Western Brewery Co. v. People Brewing Co., supra.

4. Seven Up Co. v. Cheer Up Sales Co., etc., supra.

5. Winston & Newell Co. v. Piggly Wiggly Northwest, Inc., 221 Minn. 287, 22 N.W. 2d 11.

6. 15 U.S.C.A. §§ 1051–1127; Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 8 Cir., 165 F. 413.

7. California Fruit Growers Exchange, et al. v. Windsor Beverages, Ltd. et al., 7 Cir., 118 F.2d 149; California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971; Eastern Wine Corporation v. Winslow-Warren, Ltd., Inc., 2 Cir., 137 F.2d 955.

8. Life Savers Corporation v. Curtiss Candy Co., 7 Cir., 182 F.2d 4.

ther of the parties, and declaratory relief is therefore unwarranted.[9]

Defendant may submit findings of fact, conclusions of law, order for judgment and form of judgment dismissing plaintiff's action and defendant's cross-action, without costs to either party, and upon proper notice.

Exceptions are allowed.

9. Lucien Lelong, Inc. v. Lenel, Inc., et al., 5 Cir., 181 F.2d 3.