**BROWN & BIGELOW v. B·B PEN CO.**

No. 14323.

United States Court of Appeals
Eighth Circuit.

Nov. 2, 1951.

Rehearing Denied Dec. 3, 1951.

Edmund C. Rogers and Lawrence C. Kingsland, St. Louis, Mo. (Harold Olsen, Estill E. Ezell, St. Louis, Mo., Jack W. Wicks, St. Paul Minn., and Kingsland, Rogers & Ezell, St. Louis, Mo., were with them on the briefs), for appellant.

Lewis E. Lyon, Los Angeles, Cal., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

The B·B Pen Company, a California corporation, brought this action in the federal District Court in Minnesota against Brown & Bigelow, a Minnesota corporation, praying for a declaratory judgment to the effect that the defendant was without right to assert, as it was doing and threatening to do, any claim against plaintiff with respect to plaintiff's use of the trade-mark "B·B" on ball point pens manufactured by plaintiff, and that defendant had no right to or interest in the plaintiff's trade-mark "B·B", as applied to ball point pens.

Plaintiff also asked that it be declared that it had not engaged in unfair competition with defendant. Defendant answered by denial of all the material allegations of the complaint, and filed a counterclaim against plaintiff alleging that plaintiff had been using the letters "B·B" on its ball point pens in violation and infringement of defendant's rights in defendant's trade-mark "B. & B.", and that plaintiff in so doing competed unfairly with defendant. Defendant sought dismissal of plaintiff's complaint, and on its counterclaim, injunctive relief and an accounting of damages suffered by defendant and of profits realized by plaintiff arising from plaintiff's infringement of defendant's trade-mark. There was federal jurisdiction by reason of diversity of citizenship and amount involved.

The case was tried to the court without a jury, and the court, after hearing the evidence, entered a judgment dismissing both plaintiff's complaint and defendant's counterclaim without costs to either party. The court's opinion accompanying its findings and conclusions is reported at 8 Cir., 92 F.Supp. 272. The defendant, after its motion for a new trial on its counterclaim was denied, appealed from so much of the judgment as dismissed its counterclaim. No appeal was taken by plaintiff.

On the trial, the evidence showed that defendant Brown & Bigelow had been in the business of "Remembrance Advertising" since its incorporation in 1905, and as an incident it developed the idea of producing novelties to be given away by its customers as a means of advertising the customer's business. Defendant would manufacture the novelties, usually ascribe a trade name to them, imprint them with the trade name and the customer's name and advertising message, and deliver them to the customer. The customer would then distribute the novelties to its trade, as gifts for the purpose of advertising. Through the years defendant was always alert to find and use new ideas for novelties suitable for manufacture and distribution in its business. Among such items were mechanical pencils, pens, pen and pencil sets, cigarette lighters, desk calendars, and many other such novelties.

In 1945, in common with many other manufacturers, defendant began to experiment with the type of pen known commonly as the "ball point" pen. Such pens do not have a nib as do ordinary fountain pens, but instead they use a tiny ball for the writing surface. In May of 1946, de-

fendant began distribution of these ball point pens in its ordinary channels of business, that is, such pens imprinted conspicuously with the various customers' names and advertising were sold to defendant's customers.

In addition to the customer's advertising imprint, the novelties also bore a trade name or trade-mark thought to be appropriate to each one. For example, in the case of mechanical pencils the registered trade-mark "Redipoint" was prominently displayed. In connection with the lighters, the registered trade-mark "Redilite" was used; and on the ball point pens made by the defendant, the name "Redipen" was registered and imprinted conspicuously on the pen. In connection with all of the registered names, Brown & Bigelow also applied its initial letters "B. & B.", and "B. & B. St. Paul", "B. & B. St. Paul, Minn.", and "B. & B. St. Paul, U. S. A.", to the articles. But the letters and address were not registered as trade-marks nor made conspicuous on the articles. As an example of how the letters "B. & B." were used, it was shown that on one small key-chain ball pen "B. & B. St. Paul U.S.A." was put on the small round top of the pen, in juxtaposition to patent data, in letters so small they could only be easily read with a magnifying glass. In other cases they appeared on the metal of the inner part of the pen concealed by the cover when the pen was in normal operating or carrying position, and in still other cases the letters appeared in other inconspicuous ways.

Defendant has caused its descriptive trade-mark, "Remembrance Advertising" to be registered and uses it in the regular course of its business. In rare instances, outside of the regular course of its business, defendant has sold some few articles direct to retailers for re-sale to consumers.

The business origin of the B·B Pen Company dates from January of 1945 when a partnership under the name of the Ball Pen Company was formed and began the manufacture and sale of ball point pens. Thereafter the partnership was incorporated as the Ball Pen Company, and the corporation adopted the letters "B·B" as the name and trade-mark of its ball point pen.

The symbol "B·B" was chosen by plaintiff because the writing surface was a small ball. The standard description of a certain size or grade of shot is "BB" and the widely familiar use of BB guns and BB's by boys everywhere in the country helps to link "B·B" with ball pens. Plaintiff's assumption was that "B·B" would signify a small ball to the public, and the plaintiff's ball point pen would thus be clearly differentiated in the public mind from the older type of nib-point pen. The first sale of plaintiff's pen under the name "B·B" was made on January 10, 1947. On January 16, 1947, the B·B Pen Company was incorporated and acquired all the rights of the Ball Pen Company in and to the name "B·B". The plaintiff operates principally as a wholesaler, selling its products to retailers, who in turn sell the pens to the purchasing public. In rare instances it had sold some of its pens for use for advertising the customer's business.

The B·B Pen Company knew of the appellant Brown & Bigelow, but when it adopted its trade-name "B·B" it had no knowledge that Brown & Bigelow ever manufactured or sold a ball point pen, and plaintiff had no knowledge that Brown & Bigelow marked any of its products "B. & B. St. Paul". Plaintiff did not dispute the fact that Brown & Bigelow had been in business for many years prior to plaintiff's entering into its present business.

Neither plaintiff nor defendant has a registered trade-mark, either State or Federal, in the letters "B·B" or "B. & B." That fact is not of great importance however, because as stated in Griesedieck Western Brewery Co. v. Peoples Brewing Co., 8 Cir., 149 F.2d 1019, 1022, " * * * the mere registration of a trade-mark does not in itself confer any greater rights than existed at common law without registration." Or as stated in Best & Co. v. Miller, 2 Cir., 167 F.2d 374, 376, " * * * registration of a trade-mark confers only procedural advantages and does not enlarge the registrant's substantive rights."

It is universally held that the law of trade-marks and trade-mark infringement is but a part of the law of unfair competition. Seven Up Co. v. Cheer Up Sales Co., 8 Cir., 148 F.2d 909; Hanover

Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713.

■ On this appeal, the case must be viewed in the light of the common-law principles of unfair competition and the question before us is whether the plaintiff, by adopting and using the symbol "B·B" in good faith for use as the trade name of its ball point pens manufactured for sale at wholesale to be re-sold to the public, competed unfairly with the defendant in respect to that part of the defendant's "Remembrance Advertising" business which consists in manufacturing and selling fancifully named ball point pens as advertising novelties to its customers and marking them in the manner above described. Was there an infringement of any trade-mark of defendant that would be held to be unfair competition?

■ In the view we take of the case it is unnecessary to decide whether defendant has actually made a trade-mark use of "B. & B. St. Paul U.S.A.", or "B. & B. St. Paul, Minn.", or "B. & B. St. Paul", or "B. & B." [1] Assuming, without deciding, that defendant has a trade-mark "B. & B.", it is further necessary that defendant show that plaintiff's use of its trade-mark "B·B" on its goods has caused or will cause actual or likely confusion as to the source of origin of the goods in question here— ball point pens. Plaintiff would be in unfair competition with the defendant if its use of the symbol "B·B" would give a false impression that plaintiff's goods emanate from the defendant. As stated in 52 Am.Jur.Trademarks, Sec. 86: "A universally recognized, and the most common, form or mode of unfair competition is the simulation by one person of the name, symbols, or devices employed by a business rival, so as to induce the purchase of his goods under a false impression as to their origin or ownership and thus secure for himself benefits properly belonging to his competitor."

■ The trial court found as a matter of fact that " * * * there is little likelihood of purchasers who exercise ordinary care being confused to such an extent as to purchase the plaintiff's ball point pen, believing it to be an article of the defendant." Unfair competition is a question of fact, General Finance Loan Co. v. General Loan Co., 8 Cir., 163 F.2d 709, 712; Best & Co. v. Miller, 2 Cir., 167 F.2d 374, 377. The trial court's finding of fact in this regard is binding on us unless it can be shown to be clearly erroneous. Fed.Rules Civ.Proc. rule 52(a), 28 U.S. C.A.; F. W. Fitch Co. v. Camille Inc., 8 Cir., 106 F.2d 635.

■ We think the finding of the trial court as to the lack of actual or likely confusion is amply supported by the evidence. Bearing in mind that the confusion to be guarded against is confusion in the minds of purchasers as to the origin of products they buy, the evidence in this case clearly shows that no such confusion exists or is likely to come into being. The evidence shows that appellant's pens are plainly marked "Redipen" on the clip which is used to hold the pen upright in a man's pocket. The disputed symbols "B. & B." or "B. & B. St. Paul" are placed on the pen in inconspicuous places and in letters not nearly so prominent. Appellee's pens, on the other hand, are clearly marked "B·B" on the clip or in other conspicuous places and all of appellee's pens, since their first sale, have been accompanied with the guarantee certificate of the B·B Pen Company, and in such certificate it is clearly set out that the particular pen is manufactured by "B·B Pen Company, Inc., Hollywood 28, California". Witnesses from the Minneapolis-St.Paul area, appellant's business location, testified that they were at no time confused as to the origin of the B·B pen. One such witness testified, " * * * I did not ever think that the B·B pen was put out by Brown & Bige-

1. The pen company offered evidence that the use by Brown & Bigelow of the letters "B. & B." is the same use made of the same letters as is found in the telephone directory of any city of the United States. It showed 263 individual concerns listed in the telephone books in that way. It contended that Brown & Bigelow's use is not a trade-mark use at all but simply a way of indicating on its novelties the name and address of the maker in connection with its patent and trade-mark data. Such user could only be entitled to very narrow protection.

low." An operator of an advertising agency in St. Paul testified: " * * * I have never at any time in my position as an advertising man ever had any thought that the B•B pen was put out by Brown & Bigelow." Other evidence supports the finding of the trial court that there was little likelihood of confusion, and the finding is binding on this court.

In its opinion, the trial court stated, "It appears to me from the evidence in this case that the plaintiff and the defendant are dealing with different classes of trade, and hence there is little likelihood of purchasers who exercise ordinary care becoming confused to such an extent as to purchase the plaintiff's ball point pen, believing it to be an article of the defendant. * * * Defendant is a prior user of the symbol 'B. & B.' in connection with a type of trade so different from plaintiff's that it is unlikely that confusion will arise from plaintiff's use of the symbol 'B-B.' The likelihood that even an indifferent purchaser may be misled thereby is so remote that I am convinced there has been no infringement or unfair competition by either of the parties, and injunctive relief is therefore unwarranted."

 Appellant contends the trial court gave undue consideration to the fact that the parties were dealing with different classes of trade and that it based its finding that there was little likelihood of confusion primarily on that fact. We do not disregard the law in this circuit that the lack of direct competition between the parties to an unfair competition action is not decisive of the fact that there is no unfair competition or no infringement of a trademark. Cook Chemical Co. v. Cook Paint & Varnish Co., 8 Cir., 185 F.2d 365; Hanson v. Triangle Publications, Inc., 8 Cir., 163 F.2d 74. But when considering the question whether or not confusion will be caused in the minds of purchasers as to the origin of products, the existence or absence of competition does not rule out consideration of the fact that the parties are engaged in business with different classes of trade. In Cook Chemical Co. v. Cook Paint & Varnish Co., supra, the court recognized and gave consideration to the fact that the parties were not selling the same prod-

uct, but the court found in that case that there was nevertheless confusion in the minds of the public and a mistaken belief that Cook Chemical's products emanated from the Cook Paint & Varnish Company. In the case at bar, the trial court did give consideration to the fact that the parties were respectively engaged in business with different classes of trade but only in connection with the other evidence in the case showing that there was no confusion. The whole evidence amply supports the finding of the trial court and there could be no error for the trial court to consider, among other things, the fact that the parties were dealing with different classes of trade.

The gist of the charge here is that there is unfair competition in that appellee has used on its products a symbol similar to appellant's symbol. Unfair competition is a question of fact. The trial court found that there was no actual or likely confusion in the mind of the public as to the origin of the products of the two parties and that therefore, in the absence of such confusion, there was no infringement and thus no unfair competition. We think this finding of the trial court is supported by ample evidence and the judgment of dismissal was without error.

Affirmed.