**MAAS & WALDSTEIN COMPANY and Plextone Corporation of America, Plaintiffs,**

v.

**AMERICAN PAINT CORPORATION, Defendant.**

**Civ. No. 1842.**

United States District Court
D. Minnesota,
Fifth Division.

Nov. 18, 1959.

Bierman & Bierman, New York City,
James J. Courtney & Sons, by Edward D.
Courtney, Duluth, Minn., for plaintiffs.

Palmer, Hood, Crassweller & McCarthy, by Ray G. Palmer, Duluth, Minn.,
for defendant.

DONOVAN, District Judge.

Plaintiffs brought this action [1] against defendant for damages and an injunction alleging trade-mark infringement and unfair competition by defendant's use of the mark Flexitone, and by amended complaint allege ownership and use of the trade-mark Plextone since 1949, and United States Registration No. 547,-125, dated August 28, 1951, for the mark Plextone and that they have placed the statutory notice Ⓡ on labels bearing the mark Plextone. Defendant by answer to amended complaint admits its adoption and use of the trade-mark Flexitone since 1952.

Plaintiffs contend that the two trademarks cover products of "the same or similar descriptive properties" sold and marketed by the parties to the instant case and that defendant adopted its "mark with the knowledge and intent to cause confusion in trade * * * or to deceive purchasers."

Defendant contends that the trademarks involved herein are descriptive of entirely different properties and characteristics and that plaintiffs' trade-mark as such is not entitled to registration under the laws of the United States.

The facts (thoroughly explored by pretrial preparation) are based on a trial transcript of 420 pages. They are presented by officers of the parties to the instant case.

It is undisputed that plaintiffs' trademark is registered [2], and that since 1949 they sold their products on a national scale and outside the United States under their claimed trade-mark. The defendant does business on a much more modest scale than plaintiffs, being confined more or less to Minnesota and a few neighboring states and employing nine to twelve salesmen for that purpose. It has a factory salesroom at its plant in Duluth, Minnesota, where its trade may call and pick up materials purchased by them. Defendant's salesmen have twenty-five color cards in their sales kit, together with their book of full line colors under cellophane. Defendant distributed printed material to its trade reading in part, "Easily applied with brush, roller or spray." Defendant's industrial field differs from that of plaintiffs and is more or less limited to products having to do with steel fabricating, shipbuilding, highway departments and projects of like nature. The bulk of defendant's paint line is oil base, alkyds and linseed oil, and is identified by a trade-mark or description of the product in the container. It also has a general line of marine products.

Flexitone is in single colors. Plextone is in multicolors with discrete particles.[3] The name Plextone, as used by customers and even by a witness for the defendant, is at times mispronounced or misspelled. Despite inaccuracy in the file jacket (Exhibit 5), plaintiffs claim Plextone is sold not only in multicolors but also in monocolors.

Essentially, the foregoing is a fair summary of the facts of the case at bar.

Is there such similarity of trade-marks between plaintiffs' Plextone and defendant's Flexitone as to cause confusion in the minds of potential purchasers? Is defendant's use of its symbol as a trade-mark likely to impress the purchasers or customers that plaintiffs' goods emanated from defendant, or vice versa? Does the record of the instant case support plaintiffs' claim of indulgence by defendant in misleading and unfair competition? Applying the yardstick of the rule against practiced deceit by a dealer and reasonable anticipation of its effect on the purchasing public, to the facts and evidence of the instant case, can it be concluded that defendant has by its conduct infringed plaintiffs' registered trade-mark and unfairly competed with its owner?

The foregoing queries give rise to issues of fact, for the law of trade-marks

---

1. 15 U.S.C.A. § 1121, Chapter 22, Lanham Trade-Mark Act and 28 U.S.C.A. § 1338, provide jurisdictional bases.

2. Plaintiffs' Exhibit 4.

3. See Exhibit 5 (the file jacket of Exhibit 4).

and trade-mark infringement is but a part of the law of unfair competition. It is elementary that the function of a trade-mark is to identify ownership of the article to which it is affixed, and hence is a symbol of good will. Registration of trade-marks confers nothing more than procedural advantages without enlarging the registrant's substantive rights.[4] Plaintiffs' mark Plextone was registered August 28, 1951[5], and there is no dispute about its validity, "in connection with the goods or services specified in the certificate [of registration], subject to any conditions and limitations stated therein." The latter quotation, taken from the "Lanham Trade-Mark Act," of necessity limits the field to which the trade-mark extends, by the nature of the goods or products specified in said certificate of registration.[6]

Plaintiffs' first application for registration was refused on August 7, 1950. Plaintiffs then applied to amend. This application to amend was filed on January 15, 1951. It was refused because of prior registration by U. S. Gypsum Company for the trade-mark Textone. Plaintiffs, on January 25, 1951, then filed a supplement to the amending application and the trade-mark Plextone was registered. The exclusive right to use the mark is limited to use on the class described in the application. Whatever was not claimed is not included in or protected by the trade-mark.[7] Even if plaintiffs' mark were entitled to protection throughout the field of protective coatings, the evidence does not demonstrate any confusing similarity between the marks that would warrant a finding of infringement. Based upon what has been said above, it is my considered opinion that plaintiffs' trade-mark was not infringed by defendant.[8]

The Court will next consider plaintiffs' additional contention having to do with unfair competition. It is well-established law that the manufacturer of particular goods is entitled to protection of the reputation they have acquired against unfair dealing, whether there be a technical trade-mark or not. The essence of such allegation of wrong done plaintiffs consists of a theory that defendant palms off its product for that of plaintiffs by defendant's use of a similar mark, which in the instant case is Flexitone. The evidence of the instant case furnishes no demonstrable likelihood of defendant's misleading the purchasing public to believe it is obtaining a Plextone product when it is buying a Flexitone product.

The law of Minnesota condemns deceit whereby one's patronage is directed from him to the wrongdoer "by the latter's palming off his goods as those of the former or, as it is sometimes said, by pirating or filching the other's trade. * * * Conversely, where there is no deceit there is no unfair competition, as where the defendant sells his goods as his own and not as those of the plaintiff."[9] The exercise of ordinary care by a purchaser of defendant's product would obviate all possibility of confusing it with plaintiffs'. This is pointed out by the Minnesota Supreme Court, quoting the applicable federal authority demonstrating that the trail of nonliability has

---

4. Brown & Bigelow v. B•B Pen Co., 8 Cir., 191 F.2d 939, 942, and cases cited therein.

5. 15 U.S.C.A. § 1057(b).

6. Curtis-Stephens-Embry Co. v. Pro-Tec-Toe Skate Stop Co., 8 Cir., 199 F.2d 407.

7. Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956 and cases cited.

8. National Nu Grape Co. v. Guest, 10 Cir., 164 F.2d 874; Societe Anonyme De La Grande Distillerie E. Cusenier Fils Aine & Cie. v. Julius Wile Sons & Co., D.C. S.D.N.Y., 161 F.Supp. 545.

The instant case is not one where the seller puts into the hands of dealers the means for deceiving purchasers and which could reasonably be anticipated to be used for deceptive purposes.

9. Winston & Newell Co. v. Piggly Wiggly Northwest, Inc., 221 Minn. 287, 22 N.W. 2d 11, 15.

been blazed by the Eighth Circuit Court of Appeals as follows:

" ' * * * One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition.' [Allen B. Wrisley Co. v. Iowa Soap Co., 8 Cir., 122 F. 796, 798.]

"In Trinidad Asphalt Mfg. Co. v. Standard Paint Co., 8 Cir., 163 F. 977, 983, affirmed 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536, holding that the prominent display of a manufacturer's name on an article sufficiently distinguishes it from those of others, the court quoted from Lord Morris' judgment in Reddaway v. Banham, L.R.App.Cas. [1896], 199, 221, 222, as follows:

" 'That, to my mind, is obviously done when the respondents put prominently and in a conspicuous place on the article the statement that it was camel hair belting manufactured by themselves. Having done so, they would, as it appears to me, fully apprise purchasers that it was not Reddaway's make, by stating that it was their own.'

"In such a case, as Mr. Justice Holmes said in Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 559, 28 S.Ct. 350, 352, 52 L.Ed. 616, 621, the explanation will 'give the antidote with the bane.' We think that it goes further; it operates as a prophylaxis entirely immunizing any possible harm to a business rival." [10]

The Court has considered all of the briefs of counsel, including that filed on September 30, 1959. It would extend this opinion beyond reasonable limits to discuss each case cited by counsel. Suffice it to say that the cases relied on are readily distinguishable from the present case except those referred to in support of the Court's conclusion.

The case at bar presents the Court with a fact question that necessarily must be decisive of the issues involved. The facts do not spell out unfair competition. The facts of precedent cases and those in this case differ.[11]

Occasion for confusion to the public does not appear from comparison of the two marks here in question. Certainly the evidence and controlling cases do not sustain the burden required to support the complaint of the plaintiffs.[12] I can perceive nothing that would tend to deceive the purchasing public into believing that in paying for Flexitone they were buying plaintiffs' products.

The relief prayed for by plaintiffs is denied. Defendant's counterclaim appears to be withdrawn. If it is not, then defendant's prayer for affirmative relief is also denied.

It is so ordered.

Defendant may submit findings of fact, conclusions of law and judgment consistent with the above, with each party bearing its own costs.

An exception is allowed to the parties aggrieved.

10. Ibid.

11. Brown & Bigelow v. B•B Pen Co., supra.

12. Plaintiffs cite authority in support of their contention as prayed for in the amended complaint. Such cases have to do with a finding of infringement and are based upon the presumption favoring plaintiffs where the trade-mark has been registered, that the introduction thereof in evidence makes out a prima facie case for plaintiffs; that deception and similarity of trade-marks tending to mislead the public is condemned as unfair competition; that any doubt as to the existence of confusion by reason thereof must be resolved against the newcomer. But the evidence here does not warrant conclusions of confusing similarity.