**HAIG & HAIG, LIMITED, Plaintiff,**

v.

**MARADEL PRODUCTS, INC., Defendant.**

United States District Court
S. D. New York.

Jan. 25, 1966.

---

3. He said in part: (Record p. 152)
"Well, Toomey, it's got to go. My orders are to get everything on, and it's got to go on the ship."

Watson, Leavenworth, Kelton & Taggart, New York City, for plaintiff; Leslie D. Taggart, New York City, and Daphne Robert Leeds, Washington, D. C., of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant; John Logan O'Donnell, Donald F. Johnston, Jr., and Christopher L. Carson, New York City, of counsel.

METZNER, District Judge.

Plaintiff, alleging trade-mark infringement under the Lanham Act, 15 U.S.C. §§ 1051–1127, and dilution of its respective trade-marks under the New York State Anti-dilution Statute, § 368–d General Business Law, McKinney's Consol. Laws, c. 20, moves pursuant to Fed.R. Civ.P. 65 for a temporary injunction.

Plaintiff corporation is a distiller of a Scotch whisky known as "Pinch," which has been registered as a trade-mark since July 5, 1955. Plaintiff also had registered in 1955 a trade-mark on its bottle with three indented sides (herein called "Pinch bottle"). The use of this bottle has continued since 1901, except for the period of prohibition. The name "Pinch" was given to the Scotch in 1951, although it is alleged that the public for many years prior thereto referred to plaintiff's Scotch as Pinch, probably because of the shape of the bottle. Plaintiff has spent a considerable amount of money advertising its Scotch and it seems to be conceded that the product and the trade-marks are well known in the United States.

Two products of defendant are said to infringe and dilute plaintiff's trade-marks. First is defendant's whisky-colored after shave lotion called "Scotch 'n Soda." Aside from color, its essential similarity to plaintiff's product is the conformation of the bottle. The bottle is about one half the size of plaintiff's and is not surrounded by wire mesh, as is plaintiff's, when sold. The labeling is not similar to the plaintiff's. In the exhibit submitted to the court, the after shave lotion is sold in conjunction with a mock siphon bottle of cologne in a rec-

tangular carton and the labeling on the carton is "Scotch 'n Soda." The carton is not similar to the plaintiff's triangular packaging, but plaintiff's papers include an advertisement indicating that when the after shave lotion is sold alone it is packaged in a triangular carton quite similar in design to plaintiff's packaging for its Scotch. The price of Scotch 'n Soda is $2.50.

The second product alleged to infringe plaintiff's trade-mark is defendant's bubble bath called "Pinchy." This admittedly was "dressed to resemble plaintiff's Scotch whisky." The bottle is a nine-ounce pinch bottle with the word "Pinchy" imprinted in white letters on one of the indentations. Plaintiff's bottle has the word "Pinch" in white letters imprinted on one of the indentations. The color of the bubble bath liquid is quite similar to plaintiff's Scotch. The neck label is similar in layout to plaintiff's, but different wording is used. A simulated tax stamp is affixed over the top of the bottle cap.

The bubble bath is packaged in a triangular carton that in color and design is strikingly similar to plaintiff's Scotch. Plaintiff's product is labeled

PINCH

By Haig & Haig Ltd.

Defendant's product is labeled

Bathe & Bathe
Liquid
Bubble Bath

PINCHY.

The name of defendant's distributor—"House of Tre-Jur", "Fifth Avenue, New York"—appears on both the carton and the bottle of defendant's product. The retail price is $2.00.

■ The federal statute defines trade-mark infringement as

"any * * * colorable imitation of a registered mark in connection with the sale * * * of any goods or services on or in connection with

which such use is likely to cause confusion * * *."

Confusion caused is not confusion in the abstract, but rather confusion as to source of the goods, see American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317 (1926); Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144 (2d Cir. 1956), by an appreciable number of ordinary prudent purchasers, Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2d Cir. 1960). Whether confusion as to source exists is essentially a question of fact, Brown & Bigelow v. B.B. Pen Co., 191 F.2d 939 (8th Cir. 1951), but certain indicia have been articulated to aid a court in deciding whether trade-mark infringement has occurred: degree of similarity between trade-marks in appearance and suggestion, strength of plaintiff's mark, intent to palm off products as those of another, the area and manner of concurrent use. See Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 543 (2d Cir. 1956).

■ The degree of similarity in appearance between plaintiff's Pinch and defendant's Pinchy, as set forth above, is striking. The similarity in appearance is not so striking between the after shave lotion and the Scotch, and is even less so when the after shave lotion is packaged with defendant's cologne. While defendant has submitted a search report indicating that the word "Pinch" has been used on several products, plaintiff's use of the word on its Scotch in conjunction with the shape of its bottle has readily achieved public identification and secondary meaning.

Now as to the second indicium—the strength of plaintiff's mark. The bottle shape is functional, artistic and certainly more than a mark; thus, when the bottle is not filled with a whisky product, it would not seem to be plaintiff's forever. The trade-mark statute itself seems to confine protection to "goods in connection with which the mark is used * * *", 15 U.S.C. § 1051 (1962); Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Vandenburgh, Trademark Law and Proce-

dure, § 1.23 (1959); Derenberg, Product Simulation, 64 Colum.L.Rev. 1192, 1201 (1964). While the mark may be considered strong from the length of time that plaintiff has used it in connection with the selling of its Scotch in this distinctive type bottle, it is weak when considered as applied solely to the bottle. In all probability protection would issue in the form of a preliminary injunction if the bottle were used in the sale of liquor or a related commodity. But that is not the claim here.

Considering "intent to palm off products as those of another," some analysis is needed. Some cases have given the statute (15 U.S.C. § 1051) a strict construction. See Borg-Warner Corp. v. York-Shipley, Inc., 293 F.2d 88 (7th Cir. 1961); Maas & Waldstein Co. v. American Paint Corp., 178 F.Supp. 498 (D. Minn.1959). Others have borrowed from common law of trade names to give a more far-reaching protection upon a showing of disinterested factual evidence —usually after trial. See e. g. Tampa Cigar Co. v. John Walker & Sons, Ltd., 222 F.2d 460 (5th Cir. 1955) (whisky v. cigars); Triangle Publications v. Rohrlich, 167 F.2d 969 (2d Cir. 1948) (Seventeen magazine v. dresses for girls); Safeway Stores, Inc. v. Safeway Properties, 197 F.Supp. 938 (S.D.N.Y.1961) (foodmarkets v. real estate leasing); Conde Nast Publications v. Vogue School of Fashion Modelling, 105 F.Supp. 325 (S.D.N.Y.1952) (fashion magazine v. modeling school); Time, Inc. v. Life Television Corp., 123 F.Supp. 470 (D. Minn.1954) (magazine v. televisions). Some cases will focus on the probability that the plaintiff may wish to expand into the field which defendant is occupying. See W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868 (2d Cir. Jan. 3, 1966). Other cases rest on factual basis tending to prove the public will think that the plaintiff sponsored defendant's product. Judge Learned Hand perhaps best explained these cases when he stated that a trade-mark

"protects the owner against not only its use upon the articles to which he has applied it, but upon such other goods as might naturally be supposed to have come from him." L. E. Waterman Co. v. Gordon, 72 F.2d 272, 273 (2d Cir. 1934).

It is well known by those who concern themselves with this field of law that Judge Hand thought a steam shovel corporation could not prevail against a lipstick manufacturer and that Judge Frank would give no relief to the manufacturer of Cadillac automobiles against a company producing Cadillac candy. 167 F.2d at 978.

■ Certainly defendant intended to copy plaintiff's format. They admit this as respects their product Pinchy. But whether they intended to make the public believe Haig & Haig produced or sponsored their bubble bath liquid and after shave lotion is a different question. Looked at from a more objective standard than intent, it is difficult to know at this stage, because of the wide difference in type of product, whether the public would believe that defendant's product was issued by or with the blessing of plaintiff. This is a matter for proof on the trial. Certainly the affidavits presented on this motion are not conclusive. See Atlantic Monthly Co. v. Frederick Ungar Pub. Co., 185 F.Supp. 221 (S.D. N.Y.1960).

■ Plaintiff also makes a claim under the New York Anti-dilution Statute, § 368–d General Business Law. The law is cited in defendant's brief under a section denominated "confusion." While plaintiff does not appear to contend that he would be entitled to a temporary injunction in the absence of a showing of confusion as to source, the law as written apparently would allow a court to grant an injunction in "the absence of confusion as to source of goods." State law allowing injunctions against the pirating of good will alone would seem to run afoul of the Supreme Court's decisions in Sears, Roebuck & Co. v. Stiffel Co., 376

U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

Motion denied. So ordered.